CITY OF JACKSON, MISS. *v.* FREEMAN-HOWIE, INC.

No. 41650 June 6, 1960 121 So. 2d 120

*E. W. Stennett, Wells, Thomas & Wells, Milton Mitchell, H. N. Worley,* Jackson, for appellant.

*Overstreet, Kuykendall, Perry & Phillips, Watkins & Eager,* Jackson, for appellee.

Lee, J.

This controversy arose out of the denial by the City of Jackson of the application of Freeman-Howie, Inc. to rezone from residential to commercial use certain of its property situated in a residential area. On appeal by bill of exceptions, under Section 1195, Code of 1942, Recompiled, the circuit court reversed the order of the

City Council and ordered the rezoning as prayed for. From the judgment entered, the City appealed.

The record showed the following: New U. S. Highway 51 North in the City of Jackson had been, or was being, converted into New Interstate Highway 55, which is to be a limited access thoroughfare. The right-of-way is 240 feet wide in order to provide four traffic lanes, a neutral strip between the north and south lanes, and also access or service drives on both the east and west sides of the highway. J. L. Blakeslee was the owner of an irregularly shaped parcel of land, in the form of a triangle, fronting on the east access drive for approximately 1,200 feet. Adjoining this tract on the north and east for approximately 1,320 feet is a substantial area of State owned land; and on the south for approximately 650 feet is the north side of Riverside Park, owned by the City of Jackson, and a 160 foot tract of vacant and unimproved land, owned by L. T. Rogers. There are no residences either on the State or City lands, or on the Rogers lot. However, on the west side of this highway, there is a highly developed residential subdivision, part of which abuts on the west access drive thereto; and the remaining portion adjoins a parcel of unimproved land, owned by J. L. Blakeslee, which abuts on the west access drive.

All of this property was situated in an area which had been zoned for residential use by a city ordinance of date of June 1, 1950.

Freeman-Howie, Inc. had a firm contract with J. L. Blakeslee to purchase this triangularly shaped property for a sum in excess of $100,000. It was the purpose of the corporation to construct thereon a modern motel and restaurant, modern office buildings for professional use similar to the buildings for such use on Woodrow Wilson Avenue, and a modern office building to house the regional offices of a large insurance company. By carrying out this plan, the motel and restaurant would be in close proximity to three hospitals, already constructed,

or under construction in this area, and would thus afford needed service to a potentially large number of people. Besides the latest traffic count of the Mississippi State Highway Commission established that, during 1958, a total of 10,600 trucks, automobiles and other motor vehicles daily traversed the highway in the vicinity of this property; and that, on that account, the property was not conducive to potential development as residential property, but its highest and best use would be for commercial purposes.

Consequently on November 6, 1959, both Freeman-Howie, Inc., the proposed purchaser, and J. L. Blakeslee, the owner, presented their joint application to the Zoning Committee of the City Planning Board for the purpose of having the property rezoned from A-1 residential to commercial use; and on November 9, 1959, that Committee recommended to the City Council that the application should be granted.

Upon receipt of the application, as approved by the Zoning Committee, the City Council directed the City Clerk to publish notice to all parties in interest of a hearing of the application on December 23, 1959; and such notice was duly published as required by the ordinances of the City.

On the date set for the hearing, a large number of citizens, taxpayers, property owners, and householders, claiming to be interested and affected thereby, filed their written protest against such rezoning.

After several continuances, the City Council on January 21, 1960, heard the matter and entered an order which denied the application under the following circumstances:

The order described the property, together with its location, as stated above, and recited that the petitioner had appeared and offered evidence that it had purchased the tract of land, paying a sum in excess of $100,000 therefor, after favorable recommendations had been made by the Zoning Committee of the Planning Board of the

City that the property be zoned commercial; that the corporation had proposed to construct buildings on the land, as stated above, thereby showing that such use would result in substantial benefit to the public generally, as described above; and that owing to the heavy traffic over said Highway 51 and the high price of the property, it could not be profitably developed as residential property, but its highest and best use would be for commercial purposes. The order adjudged that the owners of only 13% of the total area within 160 feet of the property, exclusive of streets and highways, protested against the proposed rezoning and offered evidence that the rezoning would depreciate the value of their property and render the same undesirable for residential use; that there were no protests from the owners of any property within the area under consideration for rezoning; and that all other protestants were the owners of residential properties lying west of New Highway 51, in whole or in part within 160 feet of the west right-of-way line of the highway.

The order further recited that one Member of the Council expressed his objection to the rezoning "and had cast his vote accordingly", and that two Members of the Council expressed their approval of the rezoning "and had cast their votes accordingly." But reference was made to Section 15 of the zoning ordinance of the City, wherein it is provided that, if there is a protest by the owners of more than 20% of the area immediately west of and directly opposite the property in question, then such rezoning would not become effective except by unanimous vote of the Council; and it was recited therein that such a contingency existed. And since the protestants constituted the requisite number, the Council held that "a unanimous vote of the Council is required to rezone said property from residential to commercial use." Consequently the petition for rezoning, although it receives a two-thirds vote of the Council, was rejected,

in compliance with the City Ordinance, because it did not receive a unanimous vote.

On appeal by the applicant, the learned Circuit Judge, in his written opinion, held in effect that, since it appeared that two members had approved and one member had disapproved the rezoning, and ''had cast their votes accordingly'', the order of the Council showed on its face that the application had received the necessary two-thirds vote of the Council, and had actually passed—a unanimous vote of approval not being required. Consequently a judgment to that effect was entered, with an admonition to the City Council for compliance in making the requisite changes. As heretofore stated, the City appealed from that judgment.

The vital question on this appeal is whether or not that part of Section 15 of the City's Zoning Ordinance adopted on June 1, 1950, with reference to amendments is valid. The applicable part thereof is as follows: *''If a protest against any such proposed supplement or amendment be filed signed by the owners of twenty (20%) per cent or more* either of the area of the lots included in such proposed change, or of those immediately adjacent to the rear thereof, extending 160 feet therefrom, or *of those directly opposite thereto, extending* 160 *feet from the street frontage of such opposite lots, such amendment shall not become effective except by unanimous vote of the Council.''* (Emphasis supplied.)

The Zoning Law of this State, Section 3594, Code of 1942 Recompiled, deals with the question of changes in the boundaries of zoning areas, and provides as follows: ''Such regulations, restrictions and boundaries may, from time to time, be amended, supplemented, changed, modified or repealed. In case, however, of a *protest against such change signed by the owners of twenty per cent. or more,* either of the area of the lots included in such proposed change, or of those immediately adjacent to the rear thereof, extending 160 feet therefrom, or *of those directly opposite thereto, extending* 160 *feet from the*

*street frontage of such opposite lots, such amendment
shall not become effective except by the favorable vote
of two-thirds of all the members of the legislative body
of such municipality."* (Emphasis supplied.)

The appellant earnestly contends that the provision
in dispute is valid. It maintains that ordinances may
provide for such changes by three-fifths, three-fourths,
or unanimous votes, citing particularly New York City,
the largest City in the country, where changes must be
made by unanimous votes in many instances; that be-
cause of Section 3593, of the Code, pertaining to the
method of procedure, the Council has a wide discretion
in such matters; that the two-thirds majority, provided
for in the statute, is simply a prohibition against the
Council's rezoning the property on a vote of less than
two-thirds of the members of the Council; and that the
circuit court had no authority to enter its order because
zoning is a legislative, and not a judicial, matter.

The appellee takes issue with the appellant on all of
these questions. It contends that the provision in dispute
is invalid, and that the two-thirds majority provided for
in Section 3594, supra, is a mandate from the Legisla-
ture to the City Council to approve the rezoning if two-
thirds of the members favor such; that the Council
actually voted in favor of rezoning of the property, and
it was simply a mistake of law that the property was
not actually ordered to be rezoned; and that the circuit
court did what the Council had in fact already done,
namely, it merely corrected a mistake of law.

 █ A city derives its existence and powers by its
charter from the State, and can perform the acts for
which it has authority thereunder except such as may
be in conflict with the Constitution. City of Indianola
v. Sunflower County, 209 Miss. 116, 46 So. 2d 81; 62
C. J. S., Municipal Corporations, Section 183, pp. 339-
341.

 █ Municipalities have only such powers as are
granted them by their charter and the statutes. Such

powers are to be construed most strongly against an asserted right not clearly given, and they cannot be extended by mere implication. Crittenden v. Booneville, 92 Miss. 277, 45 So. 723; Town of Clinton v. Turner, 95 Miss. 594, 52 So. 261; Wise v. Yazoo City, 96 Miss. 507, 51 So. 453, 26 L. R. A., N. S. 1130, Ann. Cas. 1912B 377; City of Hazlehurst v. Mayes, 96 Miss. 656, 51 So. 890; Steintenroth, et al. v. City of Jackson, 99 Miss. 354, 54 So. 955; Knight v. Johns, 161 Miss. 519, 137 So. 509; Seward v. City of Jackson, 165 Miss. 478, 144 So. 686; Martin v. First National Bank of Hattiesburg, 176 Miss. 338, 164 So. 896; City of Natchez v. Engle, et al., 211 Miss. 380, 49 So. 2d 808; Alexander v. Edwards, 220 Miss. 699, 71 So. 2d 785.

 A zoning ordinance, to be valid, must be pursuant to, and in substantial conformity with, the zoning statute authorizing it. 8 McQuillin, 3rd Ed., Municipal Corporations, Section 25.58, p. 124. It is invalid to the extent of its inconsistency with the statute. See p. 126 thereof. █ The statutory methods of amendment must be followed. See Section 25.67 thereof. Cf. also 62 C. J. S., Municipal Corporations, Section 226 (12) (c) (dd), p. 474; 101 C. J. S., Zoning, Section 83, p. 834.

In City of Hattiesburg v. Mercer, 237 Miss. 423, 115 So. 2d 165, the Court, while holding that it was not necessary to pass on the constitutionality of Section 3594, Code of 1942 Recompiled, did, in clarion tones, announce that *"the final authority for granting an amendment of the zoning ordinance is vested in two-thirds of the members of the governing authority, the same as it is in regard to any matter that comes before a mayor and two commissioners for decision."* (Emphasis supplied.)

 █ The statute, which fixes the requisite vote for an amendment, governs. See 62 C. J. S., Municipal Corporations, Section 226 (12) (c) (dd), p. 474. See also 101 C. J. S., Zoning, Section 114, pp. 869-870, Note 71 thereunder, in connection with certain New York

cases, where different majorities apply, and where it is pointed out that the requirement of a unanimous vote of the board of estimate for amendment of a zoning resolution, where the property owners protest, was held not an illegal delegation by the state of governmental power. But the State itself delegated that power. It was in nowise implied.

The two-thirds majority rule is well established in this country. If two-thirds of both Houses of the Congress vote to override a Presidential veto, the bill becomes law. Art. 1, Section VII, Par. 2, U. S. Constitution. Two-thirds of the senators present must concur to make effective a treaty, negotiated by the President. Art. II, Section II, Par. 2, U. S. Constitution. In like manner, by a two-thirds majority of both Houses, the Legislature of this State may override a Gubernatorial veto. Art. 4, Section 72, Mississippi Constitution. The mayor of a city in this State has the power to veto any measure passed by the board of aldermen; but a measure vetoed may be adopted notwithstanding, if two-thirds of the aldermen vote therefor. Section 3374-40, Code of 1942 Recompiled. The favorable vote of two-thirds of the members of the legislative body of the City, in this case, two out of the three members of the Council, under Section 3594, supra, was a mandate from the Legislature to the Council to approve the rezoning.

 There is no conflict in this case between legislative and judicial powers. When two members of the Council voted for the rezoning of the property and one voted against the proposition, the measure carried and the action of the Council effected the rezoning of the property from residential to commercial. It was simply a mistake of law that, subsequently, because of Section 15 of the Zoning Ordinance, it was decided that the measure did not pass and the application was dismissed. The circuit judge, in accordance with the provisions of Section 1195, Code of 1942, Recompiled, rendered "such judgment as the board of municipal authorities ought

to have rendered * * *'' In so doing, he in nowise assumed the right or power to zone property. He ordered that to be done which the Council, by two-thirds vote, had provided for and then, through mistake of law, had set aside.

From all of which it is clear that the circuit court correctly decided the question at issue. Consequently the judgment of the trial court must be, and it is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Kyle* and *Gillespie, JJ.,* concur.