Erwin J. SMITH, Plaintiff-Appellant,

v.

CITY OF PICAYUNE, Carle Cooper and Charles M. Hubbs, Defendants-Appellees,

and

USA, Farmers Home Administration, Intervenor-Appellee.

No. 84–4505.

United States Court of Appeals, Fifth Circuit.

July 28, 1986.

---

1. The opinion of the district court is reported at 333 F.Supp. 430 (E.D.La.1971).

Edward H. Stevens, III, Picayune, Miss., for Smith.

Ray M. Stewart, J. Edmand Pace, Picayune, Miss., Robert H. Pederson, Jackson, Miss., for City of Picayune.

Sam P. Cooper, Jr., Picayune, Miss., for Hubbs.

Jack Parsons, Eddy Parsons, Parsons & Matthes, Wiggins, Miss., for Cooper.

Peter H. Barrett, Asst. U.S. Atty., Biloxi, Miss., for USA-Farmers Home Admin.

Before WISDOM, RUBIN, and HIGGIN-BOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A landowner invokes a declaration that the City of Picayune, Mississippi, violated state law and his federal constitutional rights to due process and equal protection when the City, by agreement with the adjacent landowner, zoned property adjacent to his for multi-family residential use. We find that the City did not follow state law when it zoned the property, but reject the landowner's constitutional claims on the basis of this court's en banc decision in *Stern v. Tarrant County Hospital District.*[1]

1. 778 F.2d 1052 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986). (I continue to adhere to the views expressed in my dissent in that case, but acknowledge that it is the law of the circuit.)

## I.

Prior to 1980, Carle Cooper, one of the intervenor-defendants below, and Erwin Smith, the plaintiff, each owned adjoining tracts of land outside the city limits of Picayune, Mississippi. Smith had developed approximately eighty acres as a residential subdivision known as "Millbrook Estates," which contained single and multi-family dwellings. At the time of trial, Cooper had developed approximately 110 acres of his property as a residential subdivision which was named "The Woods."

In February 1980, the City of Picayune authorized the annexation of certain property, including the Smith and Cooper tracts, and subsequently, in accordance with Mississippi law, filed an action in the Chancery Court to annex the property. During May and June 1980, Cooper met with the City Council and the City's Planning Commission to discuss or object to certain aspects concerning the annexation of his property. No agreement was forthcoming, so, in July 1980, the Chancery action with respect to Cooper's property was dismissed on Cooper's motion. The City, however, annexed the Smith property later in 1980.

Cooper continued to meet with the City Council and the Planning Commission regarding annexation and zoning of his property. In September 1980, the Planning Commission voted to accept Cooper's request that his property be annexed and that it be zoned R–1, R–2, R–3 and C–3, rather than A–1, as are most newly annexed tracts. Finally, in May 1982, the City Council enacted ordinance 527 which provided for the annexation of the Cooper property and its zoning in accordance with his request. In March 1983, the Chancery Court ratified the annexation of the Cooper property. Smith, however, was not satisfied with the zoning of the Cooper property. Therefore, he filed this action against the City of Picayune in Chancery Court seeking injunctive relief on the grounds that the zoning of Cooper's property violated state law and his constitutional rights of due process and equal protection. By the time the state suit was filed, the Cooper tract had been sold to Charles Hubbs, who had borrowed money from the Farmers Home Administration (FmHA) to finance construction of apartments on the land.

The Chancery Court initially issued the preliminary injunction sought by Smith. The order mandated that the property be zoned A–1, that the City restrain from issuing, and rescind, any building permits for the land that would not be in compliance with the A–1 zoning category, and that it halt any construction being performed. It set this order aside in February 1984 on the motion of intervenor-defendants Hubbs and Cooper, and Hubbs resumed construction of the apartments on the Cooper-Hubbs property. The case was then removed to federal court on Hubb's motion. Thereafter the FmHA intervened. After trial before a federal magistrate, judgment was rendered for the defendants.

## II.

The City of Picayune filed a timely motion to remand the case on the ground that removal was not proper. This motion was apparently not pursued, no hearing was held on it, and no party to this litigation later challenged or is now challenging the propriety of the removal or the jurisdiction of the federal district court.

■ A federal district court may, on its own motion, consider the correctness of the grounds for removal. If it finds that the case was removed improvidently and without jurisdiction, it should remand the case to the state court.[2] When this case was removed to federal district court, that court lacked removal jurisdiction. Hubbs, who had intervened as a defendant, based his motion on the purported, but nonexistent, diversity of citizenship between Hubbs and Smith, the alleged anticipation that the FmHA would intervene as a defendant in the case, and Hubbs' intention to file a counterclaim against Smith and the City

---

2. 28 U.S.C. § 1447(c); C. Wright, *Law of Federal Courts* § 41, at 234–35 (4th ed. 1983).

under 42 U.S.C. § 1983. The other defendants did not join the petition for removal.

▇ Generally, the right of removal is determined by the pleadings as they stand when the petition for removal is filed,[3] and all defendants must join in the petition for removal.[4] If, however, at the time of trial or judgment the controversy is one over which the federal court would have had original jurisdiction, a removing defendant is estopped from protesting that there was no right to remove as an initial matter.[5] Since, at the time of judgment in this case, the district court did have subject matter jurisdiction of the case based on Smith's constitutional claims[6] and the presence of the FmHA as an intervenor-defendant,[7] we will not now dismiss the suit on the basis of the improperiety of removal at the time it occurred.

### III.

▇ Smith asserted both a state law claim and federal constitutional claims. The magistrate who tried the case found that the City had followed state law in zoning the Cooper-Hubbs property and also found in favor of the defendants on Smith's constitutional claims. The magistrate did not address, and the parties apparently did not object to, the court's exercise of pendent jurisdiction over the state law issue. Although this issue was not raised by the parties on appeal, we choose to discuss it briefly because, at first glance, the discretionary exercise of pendent jurisdiction over Smith's state law claim appears questionable.

In *United Mine Workers v. Gibbs*,[8] the Supreme Court discussed the nature of the constitutional power to decide pendent state law claims and the proper discretionary exercise of that power. The trial court is to look to "considerations of judicial economy, convenience and fairness to litigants."[9] The district court should avoid "[n]eedless decisions of state law," should dismiss the state claim if the federal claim, "though not insubstantial in a jurisdictional sense," is dismissed before trial, or if "the state issues substantially predominate."[10]

State issues certainly predominated in this litigation. We find, however, that the district court did not abuse its discretion in deciding the state law claim, in part because of the presence of the FmHA as an intervening defendant. Had the state law issue been dismissed, and the claim later reasserted in state court, the FmHA could have removed the case under 28 U.S.C. § 1442(a)(1) to federal district court.[11] Under these circumstances, we cannot say that the district court abused its discretion by entertaining Smith's state law claim.

Having noted the procedural and jurisdictional posture of this case, we now turn to the merits of Smith's claims.

### IV.

A Mississippi statute provides that no zoning classification may be "determined, established, [or] enforced" until after a

---

**3.** *American Fire Cas. Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951); C. Wright, *supra* note 2, § 38, at 215.

**4.** *Brown v. Demco, Inc.*, 792 F.2d 478, 481–82 (5th Cir.1986); C. Wright, *supra* note 2, § 40, at 227.

**5.** C. Wright, *supra* note 2, § 41, at 235; 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3739, at 578–80 (1985) (quoting *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951)).

**6.** *See* 28 U.S.C. § 1331.

**7.** *See* 28 U.S.C. § 1346(a)(2); *see also* 28 U.S.C. § 1349.

**8.** 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

**9.** *Id.* at 726, 86 S.Ct. at 1139.

**10.** *Id.*, 86 S.Ct. at 1139; *see also Brewer v. Blackwell*, 692 F.2d 387, 398 (5th Cir.1982).

**11.** *See IMFC Prof. Servs. of Florida, Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 155–56 (5th Cir.1982); *see also Spencer v. New Orleans Levee Bd.*, 737 F.2d 435, 437 (5th Cir.1984); *James River Apartments, Inc. v. Federal Housing Admin.*, 136 F.Supp. 24, 27 (D.Md.1955); *but see City of Alma v. Bell, Galyardt & Wells*, 606 F.Supp. 686, 690 (D.Neb.1985). *See generally* 14A C. Wright, A. Miller & E. Cooper, *supra* note 5, § 3727, at 457–59.

public hearing on the matter has been held, affording "parties in interest, and citizens, ... an opportunity to be heard." Notice of the hearing must be published at least 15 days before the hearing.[12] This statute has been strictly enforced.[13]

Section 102 of the City's own zoning ordinance provides:

> In the event of annexation of a new area to the City, such areas added to the City shall be considered to be in the A–1 District until otherwise rezoned in accordance with the regulations contained herein governing rezoning actions, or unless otherwise approved by the City Council by petition of the owner.... *When a zoning district classification is requested other than A–1, all of the procedures shall be followed as required in Article XII (Amendment and Change) of this Ordinance.* (Emphasis added).

Section 1203 of Article XII, referred to in § 102 quoted above, requires the City's Planning Commission to "hold a public hearing ... before submitting its report [on the proposed zoning issue] to the City Council." The applicant is required to post notice on the property of the nature and details of the hearing and to publish notice of the hearing at least fifteen days in advance.

The special zoning requested by Cooper permitted his land to be used for purposes other than single-family residences, including apartments. The City Council finally acceded to his request and, despite the opposition of Smith and others, the Council

enacted an ordinance in accordance with their agreement pursuant to § 21–1–27 of the Mississippi Code Annotated, which sets out the state law regarding municipal annexation of property.[14] Pursuant to § 21–1–29 of the state code,[15] the City then filed a petition for annexation in Chancery Court and the court directed that public notice be given of a hearing to receive objections to the annexation.[16] A show-cause notice on the annexation was published, but it did not refer to or describe the proposed zoning of the property. Apparently, a map of the parcel to be annexed, with proposed zoning classifications, accompanied one or more such notices. No objections, however, were voiced in Chancery Court and that court approved the annexation.

### V.

■ The magistrate found that § 102 of the city zoning ordinance authorized the zoning of annexed property by agreement between the City and the landowner. Section 102 of the ordinance purports to allow just that, but it also has another requirement. When, pursuant to annexation, "a zoning district classification is requested other than A–1, all of the procedures [regarding notice and hearing of proposed zoning issues before the City's Planning Commission] shall be followed as required in Article XII ... of this Ordinance."

These specific Article XII "zoning" procedures were never followed by the City in this case. Only the annexation proceedings

---

12. Miss.Code Ann. § 17–1–15; *see also* Miss. Code Ann. § 17–1–17.

13. *Cowan v. Gulf City Fisheries, Inc.,* 379 So.2d 524, 528 (Miss.1980); *Gatlin v. City of Laurel,* 312 So.2d 435, 439–40 (Miss.1975); *City of Jackson v. Freeman-Howie, Inc.,* 239 Miss. 84, 121 So. 2d 120, 124 (1960); *Brooks v. City of Jackson,* 211 Miss. 246, 51 So.2d 274, 276–77 (1951).

14. § 21–1–27 provides, in pertinent part: "When any municipality shall desire to enlarge the boundaries thereof by adding thereto adjacent unincorporated territory ..., the governing authorities of such municipality shall pass an ordinance defining with certainty the territory proposed to be included in ... the corporate limits...."

15. § 21–1–29 provides, in pertinent part: "When any such ordinance shall be passed by the municipal authorities, such ... authorities shall file a petition in the chancery court of the county in which such municipality is located...."

16. § 21–1–31 of the Miss.Code.Ann. provides, in pertinent part:

> Upon the filing of such petition ..., the chancellor shall fix a date certain ... when a hearing on said petition will be held, and notice thereof shall be given ..., and all parties interested in, affected by, or being aggrieved by said proposed enlargement ... shall have the right to appear at such hearing and present their objection to such proposed enlargement....

required by state law were followed. The City and the other defendants argue that the City fulfilled any procedural obligations it may have had regarding the zoning of the Cooper-Hubbs property through its compliance with the state provisions regarding municipal annexation. Were it not for the fact that the City also was obliged to follow state statutes regarding notice and hearing of municipal zoning determinations, the argument might have merit.

In *Gatlin v. City of Laurel*,[17] however, the Mississippi Supreme Court discussed the state zoning statute, Miss.Code Ann. § 17–1–15, and found:

> It is clear from the provisions of Section 17–1–15 that any valid zoning classification, including an "automatic zoning" classification as provided for in Section 1440 of the Laurel Zoning Ordinance, must be accompanied by (1) a public hearing and (2) proper notice of the hearing.[18]

The City in *Gatlin* contended, as do the defendants here, "that the notice and hearing for the zoning classification of the property in question occurred simultaneously with the notice and hearing for the annexation." The Mississippi Supreme Court did not accept this argument:

> The validity of the annexation proceedings in the instant case is not at issue; neither is the validity of the notice and hearing for such annexation at issue.... [T]he record indicates that the only hearing which was in fact held was the hearing before the chancellor to present evidence on the petition for annexation in compliance with Mississippi Code Annotated Sections 21–1–31, –33 (1972).
>
> It is apparent that the original classification of the property in question [under the city's "automatic" zoning ordinance] was not in compliance with Mississippi Code Annotated Section 17–1–15 (1972).

Therefore, the original classification ... was not binding on the petitioners. *See City of Jackson v. Freeman-Howie, Inc.,* 239 Miss. 84, 121 So.2d 120 (1960).[19]

It is clear that the City did not follow Mississippi state law in its attempt to zone the Cooper-Hubbs property by agreement upon annexation. The city zoning ordinance regarding agreement zoning upon annexation apparently complies with the requirements of Miss.Code Ann. § 17–1–15, but the notice and hearing requirements of the ordinance itself were not followed by the City, thus violating both the ordinance and the state statute. Hence, under Mississippi statutory and case law the agreed zoning classification of the Cooper-Hubbs property is not binding.[20]

The earlier decision of the Mississippi Supreme Court in *City of Biloxi v. Cawley*[21] is not to the contrary. That case involved only the procedure for annexation; it did not address zoning or the relationship of state zoning and annexation statutes. Under the Mississippi Supreme Court decision in *Gatlin,* the attempted zoning of the Cooper property is without effect.

### VI.

■ Although the City did not conform to state law in zoning the property, that violation of state law does not per se constitute denial of the federal constitutional right to equal protection of law. This court so held in *Stern v. Tarrant County Hospital*,[22] and, even under the view taken in the dissenting opinion in that case, a violation of state law by a state agency or actor does not constitute a denial of equal protection unless the state acts with some kind of prohibited class-based animus.[23] No such allegation was made in this case.

Smith also asserts a constitutional due process claim. Smith does not contend that the process he actually received at the

**17.** 312 So.2d 435 (Miss.1975).

**18.** *Id.* at 439.

**19.** *Id.* at 439–40.

**20.** *Id.* at 440.

**21.** 278 So.2d 389 (Miss.1973).

**22.** 778 F.2d 1052, 1056 (5th Cir.1985).

**23.** *Id.* at 1063.

hands of the City denied him due process. Nor does he contend that the procedures established by state law do not meet the constitutional minimum of procedural due process protection. He simply contends, instead, that "[i]t is a denial of due process when the state and municipality establish a procedural course and then fail to follow it."

This claim can be interpreted as asserting both a denial of substantive due process and procedural due process; neither reading, however, asserts a right protected by the Constitution. As a substantive due process matter, Smith may be contending that the City's failure to follow the procedure set forth in its own ordinance and required by state law was per se arbitrary and irrational and, as such, a violation of substantive due process. This type of claim was dismissed by the en banc court in *Stern:*

> The guarantees of the fourteenth amendment, ... its promise of protection from arbitrary or irrational state action, are guarantees that turn on federal constitutional standards of ... rationality rather than on state standards. Converting alleged violations of state law into federal ... due process claims improperly bootstraps state law into the Constitution.[24]

With respect to Smith's claim that he was denied procedural due process, in *Woodard v. Los Fresnos Independent School District*,[25] we rejected a plaintiff's claim that she was denied procedural due process protection on the grounds that she was given corporal punishment in contravention of school rules. There we stated:

> [T]he failure of an agency to follow its own regulations is not per se a denial of procedural due process.... [T]he Constitution does not prescribe particular procedures that must be followed before

the administrative action at issue here can be taken. The due process clause requires no greater adherence to extra-constitutional protections when adopted by state agencies than it does when they are adopted by federal agencies.[26]

Hence, Smith's constitutional due process claims, whether denominated substantive or procedural, are without merit.

### VII.

■ The district court also found, as an alternative ground, that Smith's claim, filed some seven months after the annexation was approved by the Chancery Court, was barred by laches. This determination rested in part on the magistrate's erroneous conclusion that the Chancery Court proceedings regarding annexation satisfied the state laws on zoning notice and hearing requirements and that Smith should have participated in and appealed from the Chancery Court's approval of annexation.

Smith filed suit ten days after the first building permit for the building was issued and seven months after the annexation was approved. Under these circumstances, Smith did not delay unreasonably in commencing suit and there is no evidence that the defendant and intervenors suffered any undue prejudice from Smith's failure to bring suit earlier.[27] The first building permit for the property had been issued just ten days before filing suit. Laches is an equitable affirmative defense; its validity has not been established.

### VIII.

The record shows that in late 1985 the City Council of Picayune took under advisement a recommendation by the City's Planning Commission to rezone the Cooper-Hubbs property to R-1. It is not clear

---

**24.** 778 F.2d 1052, 1056 (5th Cir.1985); *see also Woodard v. Los Fresnos Indep. Sch. Dist.,* 732 F.2d 1243, 1245–46 (5th Cir.1984) (school official's "deviation from school regulations" does not deprive student of substantive due process).

**25.** 732 F.2d 1243 (5th Cir.1984).

**26.** *Id.* at 1245; *see also Garrett v. Mathews,* 625 F.2d 658, 660 (5th Cir.1980); *Morris v. City of Danville,* 744 F.2d 1041, 1048 n. 9 (4th Cir.1984).

**27.** *See Pyramid Corp. v. DeSoto Cty. Bd. of Supervisors,* 366 F.Supp. 1299, 1302 (N.D.Miss. 1973); *Walker v. City of Biloxi,* 229 Miss. 890, 92 So.2d 227 (1957).

from the record whether any action has been taken pursuant to this proposal, nor does the record contain any recent information as to the status of construction on the Cooper-Hubbs property. Any relief afforded by the district court should take into consideration the present position of the parties.

The decision of the district court is REVERSED on the state law issue and the case is REMANDED for proceedings to determine the proper relief to be granted petitioner. As to the constitutional issues raised, the judgment of the district court dismissing these claims is AFFIRMED.

PATRICK E. HIGGINBOTHAM, Circuit Judge, specially concurring:

I join Judge Rubin's thoughtful opinion, writing only to add one note of emphasis. As Judge Rubin has demonstrated, this case comes to us in a unique procedural posture. A district court should seldom exercise pendent jurisdiction over a zoning matter for, as we recently made plain, zoning matters are peculiarly the province of state courts. *Shelton v. City of College Station*, 780 F.2d 475 (5th Cir.1986) (en banc), *cert. denied*, —— U.S. ——, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986).