548 So.2d 1289 (1989)
The GREAT SOUTH FAIR
v.
The CITY OF PETAL, Mississippi.
No. 07-58602.
Supreme Court of Mississippi.
August 16, 1989.
J.B. Van Slyke, Jr., Hattiesburg, for appellant.
Thomas W. Tyner, James L. Quinn, Aultman, Tyner, McNeese & Ruffin, Hattiesburg, for appellee.
Before HAWKINS, P.J., and PRATHER and BLASS, JJ.
PRATHER, Justice, for the Court:
At issue in this appeal is whether a city ordinance enacted under the police power can withstand a challenge when it conflicts with a First Amendment protected interest.
The Great South Fair (the Fair), a Mississippi non-profit corporation, brought this injunctive action in the Chancery Court of Forrest County against the City of Petal (the City) challenging the constitutionality of a zoning ordinance passed by the City. The ordinance in question limited the operation of fairs within the City to not more than one consecutive day of operation. The Fair maintained that this ordinance effectively closed it down altogether. Following testimony from both sides, the trial court issued an order denying the relief sought by the Fair. The Fair perfected its appeal to this Court and now asserts as error the following:
The chancellor erred in finding the subject ordinance to be a constitutional and legal exercise of police power.

I.
The Great South Fair owns twenty-eight (28) acres of land along the Leaf River in what is now the city of Petal, Mississippi. The Great South Fair has operated fairs, (carnivals with mechanical rides) at this location on an annual or bi-annual basis since 1964, approximately ten (10) years before the City of Petal was incorporated. The fairs would typically last from seven (7) to ten (10) days at a time. As part of the fair, civic and/or religious groups participated in a variety of ways, raising money for their organizations in the process. The City also benefitted, by the collection *1290 of property, sales, and privilege taxes from the Fair.
The City of Petal was incorporated on April 5, 1974, and the property owned by the Fair became a part of the City. On or about September 4, 1984, the City adopted City ordinance 1984(59), which on its face restricts the operation of a carnival or fair that has one or more side shows or one or more mechanical rides to not more than one (1) consecutive day of operation. The Ordinance further provides that any person, corporation or organization which operates a fair for more than one consecutive day shall pay a fine of up to $500.00 and/or shall serve thirty (30) days in jail.
Evidence introduced at the hearing showed that the Ordinance effectively prohibits the operation of the Appellant's fairs/carnivals, which the appellant has operated for the past twenty (20) years, because it is impractical and unprofitable for the Fair to be set up and taken down after only one (1) day of operation. Likewise, the Fair is the only business or organization affected by the Ordinance.
On July 31, 1985, The Fair filed a complaint for a Temporary Restraining Order and Declaratory Judgment. On October 21, 1985, the Order was granted by the chancery court, thereby allowing the fair to operate. On August 21, 1986, an Agreed Order was entered by the court directing the City to issue a license to the Fair allowing it to operate for one year, or until the court decided to cancel the license. On October 16, 1986 a hearing was held, and on May 11, 1987 a Memorandum Opinion and Final Judgment was entered by the court, finding that the Ordinance in question was valid, and denying the relief requested by the Fair.

II.

DID THE TRIAL COURT ERR WHEN IT FOUND THE SUBJECT ORDINANCE TO BE A CONSTITUTIONAL AND LEGAL EXERCISE OF POLICE POWER?
The Fair alleges under this assignment of error that the Ordinance adopted by the City of Petal is violative of the City's police power, as contained in the Tenth Amendment of the United States Constitution, and of purported violations of the Fair's freedom of speech rights under the First Amendment of the United States Constitution, both made applicable to the States under the Fourteenth Amendment. Therefore, this Court will address each of these challenges to the Ordinance's validity in turn.

A. The First Amendment
The Fair relies heavily on the authority of Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) to support its position that fairs/carnivals fall under the protection of the First Amendment. Although this Court was unable to find any state or federal cases directly concerning a fair to support this position, the Court nonetheless finds the argument a viable and supportable one based on Schad, supra, and other case law.
In Schad, the appellant challenged a city zoning ordinance which placed a ban on all live entertainment in a commercial zone. In reversing the appellant's conviction for violating the statute, the United States Supreme Court made the following statement:
By excluding live entertainment throughout the Borough, the Mount Ephraim ordinance prohibits a wide range of expression that has long been held to be within the protections of the First and Fourteenth Amendments. Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works fall within the First Amendment guarantee. ...
452 U.S. at 65-66, 101 S.Ct. at 2181, 68 L.Ed.2d at 678 (Emphasis added) (citations omitted).
In addition to the support Schad provides for the Appellant's position in the case sub judice, cases from various other jurisdictions have extended the scope of the First Amendment to activities sufficiently similar in nature to the form of expression *1291 presented here to justify a finding that fairs/carnivals are protected under the First Amendment. See, Cinevision Corp. v. City of Burbank, 745 F.2d 560, 567 (9th Cir.1984) (rock concerts); Reed v. Village of Shorewood, 704 F.2d 943, 950 (7th Cir.1983) (rock music in a bar); Davenport v. City of Alexandria, Va., 710 F.2d 148, 150 (4th Cir.1983) (street musician). Therefore, since a fair is a form of entertainment, this case is one in which there is a protected interest under the First Amendment of the United States Constitution.
The U.S. Supreme Court in Schad, while recognizing the general authority of local governments to zone and control land use, also cautioned that this authority is not limitless and "must be exercised within constitutional limits." 452 U.S. at 68, 101 S.Ct. at 2182, 68 L.Ed.2d at 680. While zoning regulations which adversely affect property interests must be "rationally related to legitimate state concerns," those regulations which affect fundamental rights are subjected to greater scrutiny. Id. "[W]hen a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest." 452 U.S. at 68, 101 S.Ct. at 2182-83, 68 L.Ed.2d at 680. (emphasis added) See also, Star Satellite, Inc. v. City of Biloxi, 779 F.2d 1074, 1079 (5th Cir.1986); Deerfield Med. Center v. City of Deerfield Beach, 661 F.2d 328, 335 (5th Cir.1981).
In addition to proving the existence of a substantial government interest, the city must also bear the burden of showing "that the ordinance in question advances the asserted interest." Providence Journal Co. v. City of Newport, 665 F. Supp. 107, 113 (D.R.I. 1987) Even in the face of such a successful showing, the Court must determine whether these interests could be served "by means that would be less intrusive on activity protected by the First Amendment." 452 U.S. at 70, 101 S.Ct. at 2183, 68 L.Ed.2d at 681. "Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone ..." NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405, 421 (1963). Thus, these protected rights of expression may be limited by the state only through the proper exercise of its police power within certain standards. Schad, supra.

B. The Police Power
The police power is conferred upon or reserved to the states, and delegated to local governments, through the Tenth Amendment of the U.S. Constitution. The police power is the right of a government to promote the public health, safety, morals and general welfare, peace and order, and public comfort and convenience. Such concepts are entirely consistent with the purposes of zoning law. 8 McQuillin, Municipal Corporations § 25.17 (1983).
As a consequence, zoning ordinances are generally endowed with a strong presumption of validity. Woodland Hills Cons. Ass'n. v. City of Jackson, 443 So.2d 1173, 1180 (Miss. 1983); Currie v. Ryan, 243 So.2d 48, 51 (Miss. 1970). On review, a zoning ordinance will generally be sustained "if it is rationally related to a legitimate state interest and does not extinguish all practicable uses of the property." Basiardanes v. City of Galveston, 682 F.2d 1203, 1212 (5th Cir.1982). Nonetheless, when enacting zoning ordinances, local governments must always be mindful of the limitations imposed on them by the police power. "A zoning ordinance will be upheld by the courts only if it has some tendency reasonably to serve the public health, safety, morals or general welfare." 1 Anderson, American Law of Zoning § 7.03 (1986). See, § 17-1-3 Miss. Code Ann. (1972 and Supp. 1988) ("For the purpose of promoting health, safety, morals, or the general welfare of the community ...).

C. Analysis
In the instant case, the preamble to the ordinance articulates the objectives to be served in passage of the land use restriction. The City found that "shows commonly known as exhibitions, carnivals, fairs, street carnivals, street fair, midway, or other exhibit and containing one or more side shows and offering to the public for its use one or more mechanical rides or games *1292 of chance or other like devices, and lasting for more than one consecutive day" were detrimental and harmful to the safety, morals, and general welfare of the City's inhabitants. A city may properly regulate land use for the purpose of promoting safety, morals, general welfare of its people, as well as the promotion of health. Thus, the ordinance in question states proper police power objectives. Police power of the state, or city, has been defined to be "that power required to be exercised in order to effectively discharge, within the scope of constitutional limitations, its paramount obligation to promote and protect the health, safety, morals, comfort, and general welfare of the people." LaSalle National Bank v. Chicago, 5 Ill.2d 344, 125 N.E.2d 609 (1955). Thus, when constitutional rights are involved, the issue becomes whether the ordinance has a reasonable tendency to promote the public welfare, safety, or morals. In this case the justifications offered by the City of Petal for enacting a challenged zoning ordinance "must fit within a defined plan or scheme of logical development serving legitimate state ends." Deerfield Med. Center, supra at 336. The reasons offered by the City of Petal here in support of the ordinance fall far short of such a plan or scheme of development.
The land on which the Fair was held was in an area already zoned for commercial use. No other business or organization in the immediate area was affected by the terms of the ordinance. The Fair was singled out for regulation by the language of the ordinance, especially since there were no other fairs of this type in Petal. Testimony at trial revealed that the main objections to the Fair centered around increased traffic problems, which placed a burden on the local police, the consumption of alcoholic beverages in the Fair's midway area, and the presence of games which "gypped" customers out of their money. However, many of the same problems were present at the skating rink, at ball games and at a pep rally held by the University of Southern Mississippi on the land used by the Fair each year. None of the aforementioned activities was affected by the Ordinance in question, despite the fact that they created many of the same "problems" as the Fair.
The Mayor of Petal testified that no one had actually ever appeared at a City Council meeting to complain about the traffic or drinking problems caused by the Fair. The Appellant also appears to have made reasonable efforts to minimize traffic problems, by having the Jaycees park cars, and by engaging off-duty policemen and Forrest County deputies to assist in traffic control efforts. The Mayor also testified that the Fair created no major security problems. The Chief of Police testified that the traffic problems associated with the Fair could be solved by giving the police force thirty (30) days advance notice before the Fair came to town.
The so-called "drinking problem" appears from the record to have mainly consisted of the Mayor's objection to people drinking beer in the presence of children while attending the Fair. Such activity would not seem to rise to the level of a major problem. The City of Petal also already has an Open Container law in effect, prohibiting the possession of alcoholic beverages in open containers. The Mayor knew of no arrests which had been made in connection with the Open Container law.
The final justification offered by the City for enacting the Ordinance is that some people felt they had been "gypped" by the games of chance at the Fair. There was no actual showing of illegality in connection with any of these games and no arrests had ever been made. The essence of this complaint appears to be that people were upset because they had lost money playing these games. However, no proof of such loss was offered. Such dissatisfaction does not justify the actions taken by the City.
The justifications offered by the City of Petal in support of the Ordinance bear a striking resemblance to those offered by the Borough of Mt. Ephraim in Schad, supra. The Borough sought to eliminate problems that may have been associated with live entertainment, such as "parking, trash, police protection, and medical facilities." 452 U.S. at 73, 101 S.Ct. at 2185, 68 L.Ed.2d at 683. In invalidating the ordinance, *1293 the Supreme Court found these reasons unpersuasive under the circumstances:
The Borough has presented no evidence, and it is not immediately apparent as a matter of experience, that live entertainment poses problems of this nature more significant than those associated with various permitted uses; nor does it appear that the Borough's zoning authority has arrived at a defensible conclusion that unusual problems are presented by live entertainment. We do not find it self-evident that a theater, for example, would create greater parking problems than would a restaurant... . It may be that some forms of live entertainment would create problems that are not associated with the commercial uses presently permitted in Mount Ephraim. Yet this ordinance is not narrowly drawn to respond to what might be the distinctive problems arising from certain types of live entertainment, and it is not clear that a more selective approach would fail to address those unique problems if any there are. The Borough has not established that its interests could not be met by restrictions that are less intrusive on protected forms of expression.

452 U.S. at 74, 101 S.Ct. at 2185-86, 68 L.Ed.2d at 683-84. (Emphasis added) (Citations and footnotes omitted). After examining the reasons offered by the City to justify the enactment of the Ordinance, this Court holds that the City has not established that its interests could not be met in a less intrusive manner than effectively banning the Fair altogether.
In addition to its failure to create an ordinance that is narrowly drawn enough to pass constitutional muster, the City of Petal has also failed to offer reasons for enacting the Ordinance that are sufficiently based in fact under the lesser standard of its general police powers where no constitutional challenge is involved. "The city must buttress its assertion with evidence that the state interest has a basis in fact and that the factual basis was considered by the city in passing the ordinance." Basiardanes v. City of Galveston, 682 F.2d 1203, 1215 (5th Cir.1982).
Under § 17-1-9 M.C.A., "zoning regulations shall be made in accordance with a comprehensive plan ..." This rule has been expressed by this Court thusly: "The zoning statutes of this state contemplate the adoption by each municipality of a comprehensive zoning plan." Woodland Hills, supra at 1179. The ordinance enacted by the City of Petal bears no such relation to a comprehensive plan. As noted earlier, the site of the Fair was in an area already zoned for commercial use. Furthermore, the only business affected by the language of the ordinance was the Great South Fair. Several other businesses which caused similar "problems" remained unaffected by the Ordinance. Instead of being regulated pursuant to a comprehensive plan, the Fair appears to have been conspicuously singled out for unfair treatment.
Although zoning ordinances are presumed valid, this presumption can be overcome when the ordinance in question does not bear a "rational relationship" to a legitimate state interest. This Court is of the opinion that this ordinance enacted by the City of Petal fails even this lesser standard of review of "rational relationship" test and is held to be an unauthorized use of the police power by the City.
For the foregoing reasons, it is the holding of this Court that the decision of the lower court be reversed and that Ordinance 1984(59) is held to be invalid.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., and SULLIVAN, J., not participating.