FREELANCE ENTERTAINMENT, LLC., J.B. Hunt and Pamela Rushing, Individually Plaintiffs

v.

Harry SANDERS, J.L. Williams, Tommy Southerland, Joe Brooks, and Leroy Brooks in Their Official Capacities as Members of the Board of Supervisors of Lowndes County, Mississippi, and C.B. "Butch" Howard, in His Own Official Capacity as Sheriff of Lowndes County, Mississippi Defendants

No. CIV. 3:02CV109–M–B.

United States District Court,
N.D. Mississippi,
Western Division.

April 24, 2003.

Mark Andrew Cliett, Cliett & McRae, PLLC, West Point, Michael F. Pleasants, Pleasants Law Firm, Memphis, TN, for Freelance Entertainment, LLC, J.B. Hunt, Pamela Rushing, Individually, plaintiffs.

Timothy C. Hudson, Sims & Sims, Allison Pritchard Kizer, Allison Pritchard Kizer, Attorney, Columbus, for Harry (NMI) Sanders, J.L. Williams, Tommy Southerland, Joe Brooks, Leroy Brooks, In their Official Capacities as members of the Board of Supervisors of Lowndes County, Mississippi, C.B. "Butch" Howard, In his

Official Capacity as Sheriff of Lowndes County, Mississippi, defendants.

### MEMORANDUM OPINION

MILLS, District Judge.

Freelance Entertainment, LLC., J.B. Hunt and Pamela Rushing ("Freelance") moved the court to enjoin an ordinance enacted by the Board of Supervisors of Lowndes County, Mississippi ("Lowndes County") relating to businesses and individuals associated with sexually oriented businesses [13–1]. The court has reviewed the briefs, heard the witnesses, listened to the arguments, and is now prepared to rule.

### FACTS

Freelance, a "sexually oriented business," desires to present nude and semi-nude erotic dances to the consenting adult public. Freelance announced its plans to open an adult entertainment business in Lowndes County in mid–2001. After the announcement, Lowndes County began exploring the need for regulating such businesses. On September 17, 2001, the County voted to adopt what is now known as the Sexually Oriented Businesses Ordinance of September 2001 ("the Ordinance").

Feeling aggrieved with Lowndes County, the plaintiffs moved this court to enjoin enforcement of the Ordinance, alleging that Lowndes County is without the power to pass the Ordinance and that it is facially unconstitutional. Freelance contends that the Ordinance fails to provide procedural safeguards concerning the granting and denial of licenses and prompt judicial review of Ordinance provisions. Freelance also challenges certain definitions in the Ordinance as being overly broad and unenforceable. The court's discussion of these claims follows.

### LAW

The standard for determining whether a preliminary injunction will be granted is set out in *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974) which lists the following elements:

(1) a substantial likelihood that plaintiff will prevail on the merits,

(2) a substantial threat that irreparable injury will result if the injunction is not granted,

(3) that the threatened injury outweighs the threatened harm to defendant, and

(4) that granting the preliminary injunction will not disserve the public interest.

*Id.* at 572. "In order to prevail plaintiff must carry the burden on all four elements." *Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir.1981).

### DISCUSSION

### I. THE CONSTITUTIONAL ISSUES

Freelance claims that the Ordinance Lowndes County passed is facially invalid since it violates the First Amendment to the Constitution of the United States as well as the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution.

#### The Goals and Objectives of the Ordinance

■ The Mississippi Supreme Court has declared that "[a]lthough zoning ordinances are presumed valid, this presumption can be overcome when the ordinance in question does not bear a 'rational relationship' to a legitimate state interest." *Great South Fair v. City of Petal*, 548 So.2d 1289, 1293 (Miss.1989). The zoning must be rationally related to a legitimate governmental interest, such as protecting the health, safety or welfare of the County.

*Harrison* at 401 (citing Miss.Code Ann § 17–1–9 (1995)). Where "regulations affect fundamental rights, they are subjected to greater scrutiny." *Great South Fair* at 1291 (citing *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981)). Additionally, the County must show that the ordinance advances the asserted interest. *Id.* (citing *Providence Journal Co. v. City of Newport*, 665 F.Supp. 107, 113 (D.R.I.1987)).

In *Great South Fair*, the City of Petal passed a zoning ordinance limiting the operation of fairs within the city to not more than one consecutive day of operation. Its objectives in passing the restriction were to promote the safety, morals, general welfare and health of people in the City of Petal. The main objections to the Fair were said to be traffic problems, consumption of alcoholic beverages and the presence of games which "gypped" customers out of their money. *Great South Fair* brought an injunctive action against the City challenging the constitutionality of the ordinance. *Great South Fair* argued that fairs and carnivals, as a form of entertainment, are a protected interest under the First Amendment of the United States Constitution. The trial court denied the relief sought by *Great South Fair*, which appealed. The Mississippi Supreme Court found that the ordinance adopted by the City of Petal failed to meet even the lesser standard of review and concluded that it was an unauthorized use of police power by the City. The Court concluded that Great South Fair appeared to have been targeted for unfair treatment as it was the only business affected by the language of the ordinance. The Mississippi Supreme Court reversed the lower court's ruling and found the ordinance invalid.

In this case, Lowndes County voted to adopt the Sexually Oriented Businesses Ordinance of September 2001 in order to regulate businesses such as the one Freelance proposed to open. The County allegedly found that sexually oriented businesses are frequently used for unlawful sexual activities such as prostitution; that they have a deleterious effect on other existing businesses and adjacent residential areas; that they cause increased crime, downgrade property values; and degrade the quality of life in adjacent areas. Lowndes County was also concerned over the spread of sexually transmitted diseases (STD's). Consequently, the County believed that an Ordinance was necessary to address the adverse effects of adult businesses such as the one Freelance proposed to operate in Lowndes County.

■ The preamble to the Ordinance states the goals and objectives to be accomplished in adopting the Ordinance. The County adopted the Ordinance for the "protection and preservation of public health, safety and general welfare of the citizens of Lowndes County, as well as to protect and preserve the quality of the residential neighborhoods, public facilities, religious facilities and commercial district of Lowndes County and the quality of life in general." As evidence of secondary effects of sexually oriented businesses, Lowndes County relied on studies conducted in other cities in Mississippi, Florida, California, Washington, New York and Arizona. Cities do not necessarily have to conduct their own independent analyses with respect to the effects of nude dancing. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 296, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (citing *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51–52, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)). The municipality may rely on the experiences of other cities "so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Id.*

■ As previously stated, a zoning ordinance which affects fundamental rights, such as the freedom of expression rights at issue in this case, is valid only if it furthers a substantial governmental interest. Lowndes County's goals and objectives for enacting the September 17, 2001, Ordinance include "protection and preservation of public health, safety and general welfare of the citizens of Lowndes County, as well as to protect and preserve the quality of the residential neighborhoods, public facilities, religious facilities and commercial district of Lowndes County and the quality of life in general." This court concludes that the objectives outlined in the Ordinance are related to protecting the health, safety and welfare of Lowndes County. Accordingly, the court finds that the County's Ordinance was written in furtherance of a substantial interest.

### Section IX. (B)(11)

The plaintiff complains that the definition of "Specified Sexual Activities" prohibits protected First Amendment speech when used in conjunction with Section IX (11) of the Ordinance, thus making the ordinance unconstitutionally overbroad.

(24) *SPECIFIED SEXUAL ACTIVITIES* means and includes any of the following:

> (A) the fondling or other erotic touching of human genitals, public region, buttocks, anus, or female breasts, whether covered or uncovered;
>
> (B) sex acts, normal or perverted, actual or simulated, including intercourse, oral copulation, or sodomy;
>
> (C) masturbation, actual or simulated; or
>
> (D) excretory functions as part of or in connection with any of the activities set forth in (A) through (C) above.

The Ordinance suggests that sexually oriented businesses are often used for unlawful sexual activities such as prostitution and illicit sex. Thus, in an effort to curtail those crimes and the concomitant spread of sexually transmitted diseases, the County included Section IX, the revocation provision, in its Ordinance. This provision mandates that a license shall be revoked if a "licensee has, with knowledge, permitted a person or persons to engage in specified sexual activities on the premises of the sexually oriented business."

■ "While it is now beyond question that nonobscene nude dancing is protected by the First Amendment, even if 'only marginally so,' it is also clear that the government can regulate such activity." *LLEH, Inc. v. Wichita County, Tex.*, 289 F.3d 358, 365 (5th Cir.2002) (citing *J & B Entm't, Inc. v. City of Jackson*, 152 F.3d 362, 369 (5th Cir.1998) (quoting *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); internal citations omitted)). When local governments undertake to regulate protected activity, the First Amendment commands not only that the restriction be *related* to the governmental interest asserted, but also that each limitation imposed *furthers* an important or substantial governmental interest. *U.S. v. O'Brien*, 391 U.S. 367, 376–77, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). *O'Brien* makes it clear that a "government regulation is sufficiently justified:

1. if it is within the constitutional power of the Government;

2. if it furthers an important or substantial governmental interest;

3. if the governmental interest is unrelated to the suppression of free expression; and

4. if the incidental restriction on alleged First Amendment freedoms is no

greater than is essential to the furtherance of that interest."

*Id.*

Lowndes County passes the first prong of the *O'Brien* four-part test since the "Home Rule Statute" clearly grants authority to enact the Ordinance. Lowndes County's efforts to protect the health and safety of the public are within it police powers.

■ The second factor is whether the ordinance furthers an important governmental interest. Lowndes County asserts that the Ordinance targets secondary effects of sexually oriented businesses on the surrounding community such as illicit sex, prostitution and the spread of diseases. The County's interests in regulating adult businesses—combating secondary effects—are important governmental interests. "[S]o long as the regulation is unrelated to the suppression of expression, '[t]he government generally has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word.'" *Pap's* at 299, 120 S.Ct. 1382 (citing *Texas v. Johnson*, 491 U.S. 397, 406, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989)). The court concludes that this restriction furthers an important governmental interest.

The Ordinance satisfies the third factor in *O'Brien*, as the protected governmental interest is unrelated to the suppression of free expression. Lowndes County seeks to protect and preserve the public health, safety and general welfare of the citizens of Lowndes County, as well as to protect and preserve the quality of the residential neighborhoods, public facilities, religious facilities and commercial district of Lowndes County and the quality of life in general. These interests are clearly unrelated to any suppression of free expression.

■ The fourth prong—that the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest—is also satisfied. Any incidental impact on the expressive element of the naked dancing is minimal. Restricting particular movements of the performer does not significantly impair the dancers' expression. Accordingly, the court finds the definition of "Specified Sexual Activities," when used in conjunction with Section IX(B)(11) of the Ordinance, is valid.

## Section IX. (B)(7)

■ Freelance admits and Lowndes County agrees that the Ordinance, as drafted, does not prohibit nude dancing. The plaintiff points out, however, that the ordinance is facially invalid when the definition of "nudity" is read with Section IX (B)(7). That provision allows the Director to revoke a license if a licensee knowingly permits any act of sexual intercourse, sodomy, oral copulation, masturbation, **or other sexual conduct** in or on the licensed premises. Assuming that the presentation of nude and semi-nude erotic dance entertainment is considered "other sexual conduct," it is prohibited under Section IX(B)(7). The court concludes that the phrase "other sexual conduct" as used in Section IX(B)(7) is overly broad and confusing and conflicts with the definition of "specified sexual activities" in Section I(24) which are also prohibited. This court cannot envision other sexual acts beyond those listed in Section I(24). Perhaps the Lowndes County Board of Supervisors have more gifted imaginations in these regards and can describe in greater detail other prohibited sexual activities. Accordingly, the court finds that the restriction in Section IX(B)(7) is unconstitutional since it is overly broad and conflicts with the definition of specified sexual activities in Sec-

tion I(24). In order for the Ordinance to pass constitutional muster the Board of Supervisors must clarify in further detail the prohibited acts or delete Section IX (B)(7).

## Section XVII.

### Buffer Zone and Touching of Patrons

 Freelance challenges Section XVII (A) (Additional Regulations Concerning Public Nudity) stating that an employee, while nude or semi-nude, must be at least ten (10) feet from any patron or customer and on a stage at least two (2) feet from the floor. The Fifth Circuit addressed the issue of buffer zones in *LLEH, Inc. v. Wichita County, Texas,* 289 F.3d 358 (5th Cir.2002). That court reversed the lower court's ruling that a six-foot buffer and 18–inch stage height provision was not valid and that only a less restrictive, three-foot buffer would be constitutional. The District Court concluded that "the regulation must go only so far as is required to achieve the stated interest of deterring sexual contact and touching." It held the six-foot buffer and 18–inch stage height restriction would "effectively close the club" and thus violated *O'Brien's* fourth prong: the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *O'Brien* at 376–77, 88 S.Ct. 1673. The Fifth Circuit disagreed, stating that the restriction addressed sexual contact and touching without banning partially or all nude dancing. *LLEH* at 368.

The Fifth Circuit referred to *DLS, Inc. v. City of Chattanooga,* 107 F.3d 403, 413 (6th Circuit 1997). Chattanooga had also reviewed a six-foot buffer requirement. Chattanooga noted that when economic impact is considered in determining whether a regulation is sufficiently narrow, the court considers "the economic effects of the ordinance in the aggregate, not at the individual level." It further noted that "if the ordinance were intended to destroy the market for adult cabarets, it might run afoul of the First Amendment, but not if it merely has adverse effects on the individual theater." *Id.* (Citation omitted). The Fifth Circuit concluded that the District Court's decision "runs contrary to the principle that 'an incidental burden on speech is no greater than is essential, and therefore is permissible under *O'Brien, so long as* the neutral regulation promotes a substantial government interest *that would be achieved less effectively absent the regulation.'"* *LLEH* at 367 (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)). The Fifth Circuit concluded that the six-foot buffer requirement in *LLEH* satisfied *O'Brien's* narrow tailoring prong. Additionally, because the County's interests would be better-achieved with the stage-height provision, the Fifth Circuit said that the 18–inch stage-height also satisfied *O'Brien's* fourth prong. Accordingly, the Fifth Circuit held that the six-foot buffer zone between patrons and performers, and eighteen-inch stage height for performers were constitutional.

Lowndes County seeks to expand the Fifth Circuit buffer established in *DLS.* In this case, the County's reasons for the ten-foot buffer/two-foot elevated stage restriction focuses on deterring the crimes of prostitution and the spread of diseases and not the expression—nude or semi-nude dancing. While the dancer's erotic message may not be as dynamic from ten feet, this court finds that the ten-foot buffer/two-foot elevated stage furthers the government's substantial interest in "curtailing public sexual contact and sexual criminal offenses by keeping nude entertainers just out of the reach of the nearest patron" and does not significantly impair

the dancers' expression. Clearly a six-foot buffer and eighteen-inch height restriction would pass constitutional muster in the 5th Circuit. i.e. *LLEH*. Whether these zones should be expanded to ten feet and two feet appears to require legislative or policy considerations for which this court is ill-equipped to consider. At first blush, resolution of this issue appears to rest in the eye of the beholder. If the County is bound to challenge and expand the zones approved in *LLEH*, then such governmental restrictions are of little moment to this court. In this light, the buffer provision satisfies *O'Brien's* narrow-tailoring prong. Accordingly, the court finds that the ten-foot buffer/two-foot elevated stage restriction is not impermissibly prohibitive and, therefore, is constitutional.

*Tipping*

■ In an attempt to supposedly prevent prostitution, Lowndes County included a provision in the Ordinance regarding tipping and the payment of gratuities. Freelance contends that Section XVII(B) is unconstitutional because it makes tipping or the payment of a gratuity a misdemeanor. Upon review of XVII(B), the court finds that the ordinance does not ban tipping. It merely restricts the manner and time within which tips may be given. A patron is prohibited from tipping an employee while the employee is nude or semi-nude. The court concludes that this limitation is not substantially broader than necessary to further the government's objective of targeting prostitution. Therefore, the court holds that the "tipping" provision is constitutional.

**Prior Restraints**

Freelance has also raised a facial constitutional challenge to the County's licensing ordinance applicable to Freelance's business on First Amendment prior restraint grounds. The plaintiffs' principal argument is that the Ordinance lacks procedural safeguards and prompt judicial review.

■ A prior restraint exists if the government conditions speech upon the prior approval of public officials. "Where the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion." *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 227, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). "A scheme that fails to set reasonable time limits on the decision maker creates the risk of indefinitely suppressing permissible speech." *Id.* Procedural safeguards dealing with this issue were determined in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). "The core policy underlying *Freedman* is that the license for a First Amendment-protected business must be issued within a reasonable period of time, because undue delay results in the unconstitutional suppression of protected speech." *FW/PBS* at 228, 110 S.Ct. 596. The principles are that "the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event the license is erroneously denied." *Id.* (citing *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965)).

According to Freelance, the licensing scheme vests unbridled discretion in the decision maker—the Director. The County defines the Director as "the Sheriff and such employee(s) of the Sheriff's department as he may designate to perform the duties of the Director under this ordinance." As Freelance failed to sufficiently brief its argument concerning the "inordinate authority" vested in the Sheriff/Director to grant, deny, suspend or revoke

licenses for sexually oriented businesses, the court will not address that argument in this Order. The court will address the time limits the Sheriff/Director has in issuing a license, the time limits associated with the signing of the bill of exceptions under Miss.Code Ann. § 11–51–75 and whether Freelance is entitled to a *trial de novo* review.

### Time Limits

First, Section IV of the Ordinance (Issuance of a License) describes the process and time line for obtaining a license. Upon completion of an application for a license to operate a sexually oriented business, the Sheriff/Director:

1) issues a temporary license to the applicant;

2) refers application to city departments for investigation;

3) gives applicant notice of grant/denial within thirty *(30)* days of completion of application;

4) applicant may request (in writing) before notice is issued for an additional ten (10) days to come into compliance with ordinance;

IF DENIED:

5) applicant may appeal, by written notice to Board Secretary within ten *(10)* days after service of notice upon applicant;

6) Sheriff/Director may respond within fifteen *(15)* days to Board of Supervisors;

7) Board of Supervisors vote to uphold or overrule Sheriff/Director decision vote taken within twenty-one **(21)** calendar days after Board Secretary receives notice of appeal;

8) status quo immediately prior to denial of license to be maintained during pendency of appeal

9) Judicial Review may be made pursuant to Section X of Ordinance

Section X[1] of the Ordinance permits an applicant to seek judicial review of any court of competent jurisdiction within fourteen (14) days of denial of initial or renewal application. Lowndes County shall:

1) transmit record of administrative action to court no later than five (5) business days;

2) answer complaint no later than ten (10) days after receipt of summons;

ADDITIONALLY:

3) submit response brief within fourteen (14) days of receipt of petitioner's brief

Under Lowndes County's licensing scheme the time limit for obtaining a license can be extended to 76 days. Freelance contends that the Ordinance fails to provide "prompt judicial review" since the Fifth Circuit has determined that a 60–day limit imposed no undue burden on licensing provisions. This issue was discussed in *TK's Video, Inc. v. Denton County, Texas,* 24 F.3d 705 (5th Cir.1994). One of *TK's* arguments was that the County must have a deadline shorter than 60 days within which to issue a license. That court distinguished *Teitel Film Corp. v. Cusack,* 390 U.S. 139, 141, 88 S.Ct. 754, 19 L.Ed.2d 966 (1967) where the Supreme Court found that 50 to 57 days was not a specified period of time. *Teitel* dealt with a content-based regulation where administrators were required to review films before they could be shown. It compared viewing films to licensing adult businesses—reviewing applications, performing back-

1. The County is in the process of amending Section X of the Ordinance to comply with the 10 day appeal time of Mississippi Code § 11–51–75 as the appeal time differed from state law.

ground checks, making identification cards, and policing design, layout, and zoning arrangements. Therefrom, *TK's* reasoned that the County's order "creates less of a danger to free speech and requires more of a time-consuming inquiry than screening movies," and thus concluded that 60 days for issuing a license imposed no undue burden. *TK's* at 708.

Likewise, this court concludes that 60 days for acting on a license application would impose no undue burden on Lowndes County Board of Supervisors and suggests that the Board amend Section X of the Ordinance in accordance with this court's finding so as to be in compliance with the Fifth Circuit's ruling in *TK's*.

### Bill of Exceptions

■■■ Next, Freelance argues that procedures provided by Miss.Code Ann. § 11–51–75 do not afford an aggrieved applicant or license holder the type of prompt judicial review set forth in *Freedman* and *FW/PBS*. § 11–51–75 provides a right of appeal to the Circuit Court from an adverse decision of the Board of Supervisors if filed within ten (10) days. The Circuit Court considers only a bill of exceptions embodying the facts, judgment and decision and if signed by the acting president of the Board of Supervisors. The statute gives no time limit within which the president of the Board of Supervisors is to sign the bill of exceptions. Freelance points out that the appeal could be held in abeyance indefinitely by the inaction of the president of the Board of Supervisors, thus rendering prompt judicial review and/or prompt judicial decision of the Board of Supervisors actions impossible.

Assorted Mississippi cases have addressed failures of the president of a board to sign a bill. The Mississippi Supreme Court holds that when an accurate bill of exception is presented, it is the duty of the

president to sign it. *Polk v. City of Hattiesburg,* 109 Miss. 872, 69 So. 675 (1915).

The point Freelance makes is well-taken. The court suggests that the County amend Section X of the Ordinance (Judicial Review) by providing a time limit of fifteen (15) days within which the president of the Board of Supervisors must sign the bill of exceptions.

### De Novo Review

■■■ Freelance argues that it is entitled to a *de novo* review under Section X of the Ordinance—Judicial Review. The County maintains that the right to appeal from an adverse decision of the Board of Supervisors is governed by Miss.Code Ann § 11–51–75.

§ 11–15–75 provides that:

Any person aggrieved by a judgment or decision of the Board of Supervisors, or municipal authorities of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the Board of Supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the Board of Supervisors or of the municipal authorities. The clerk thereof shall transmit the bill of exceptions to the circuit court at once, and the court shall either in term or in vacation hear and determine the same on the case as presented by the bill of exceptions as an appellate court, and shall affirm or reverse the judgment . . . .

■■■ "[T]he supremacy of federal law means that valid federal law overrides otherwise valid state law in cases of conflict between the two." *City of Morgan City v. South Louisiana Elec. Co-op.* 49 F.3d 1074, 1079 (5th Cir.1995). "Hence suprem-

acy does not deprive the state of any of its preexisting concurrent lawmaking authority, but merely dictates that a particular state law in conflict with a particular federal law will be trumped in cases where both apply." *Id.* "Whether ... free speech rights have been infringed is a mixed question of law and fact [and t]he appropriate standard of review is *de novo.*" *Baby Dolls Topless Saloons, Inc. v. City of Dallas,* 295 F.3d 471, 479 (5th Cir.2002) ((*citing Int'l. Soc'y. for Krishna Consciousness of New Orleans, Inc. v. Baton Rouge,* 876 F.2d 494, 496 (5th Cir.1989) (citing *Dunagin v. City of Oxford,* 718 F.2d 738, 748 n. 8 (5th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984))). In this case, Miss. Code Ann. § 11–51–75 is trumped by federal law requiring *de novo* review with respect to speech rights. The court concludes that the Ordinance created by Lowndes County must be consistent with federal law and provide for *de novo* review in order to be valid.

## II. THE COUNTY'S AUTHORITY TO REGULATE NAKED DANCING

■ The plaintiff challenges the validity of Lowndes County's Ordinance alleging that the County is without power or authority to pass ordinances regulating sexually oriented businesses. Freelance argues that Lowndes County's fundamental source of power comes from Art. 6, § 170 of the Mississippi Constitution of 1890. § 170 grants county boards of supervisors full jurisdiction over roads, ferries and bridges and allows the boards of supervisors to "perform other duties as may be required by law." Art. 6 § 170 does not, however, grant authority to boards of supervisors to license and regulate adult businesses.

"Mississippi cases uniformly hold that ordinances adopted by boards of supervisors which are outside the powers granted to them by the Constitution or state statute are contrary to law and are prohibited." *Prestage Farms, Inc. v. Board of Supervisors,* 23 F.Supp.2d 663, 667 (N.D.Miss.1998), *vacated on other grounds,* 205 F.3d 265 (5th Cir.2000) (citing *City of Jackson v. Freeman–Howie, Inc.,* 239 Miss. 84, 121 So.2d 120, 123–124 (1960). In that case, Northern District Judge Davidson found that boards of supervisors "need legislative authority to assert power over anything or anyone other than roads, ferries, and bridges." *Id.* Such authority is given in Miss.Code Ann. § 19–3–40—commonly referred to as the "Home Rule Statute." *Id.* § 19–3–40 gives boards of supervisors authority to "adopt, modify, alter and repeal such orders, resolutions or ordinances with respect to county affairs, property, and finances as long as they are not inconsistent with state law." *Id.* This code section is the "sole derivative of the boards' authority to pass ordinances" regulating or restricting land-use. *Id.*

This court finds that the Lowndes County Board of Supervisors has the power and authority to enact its Sexually Oriented Business Ordinance of September 2001 under the "Home Rule Statute." The question becomes whether the Ordinance at issue complies with the statute.

■ Zoning regulations which restrict, rather than ban, the location of adult entertainment businesses throughout a jurisdiction, and are "designed to combat the secondary effects of such businesses," rather than to constrain the content of their speech *per se,* are considered time, place, and manner regulations. *Encore Videos, Inc. v. City of San Antonio,* 310 F.3d 812, 815 (5th Cir.2002) (citing *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 49, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)). Time, place and manner restrictions, by their nature, require the exercise

of a local government's "zoning" authority. Under § 17–1–9 M.C.A., zoning regulations must be made in accordance with a comprehensive plan. The Mississippi Supreme Court has interpreted this statute to mandate that "zoning statutes of this state contemplate the adoption by each municipality of a comprehensive zoning plan." *Great South Fair* at 1293 (Miss. 1989) (citing *Woodland Hills Cons.Ass'n. v. City of Jackson*, 443 So.2d 1173, 1179 (Miss.1983). Miss.Code Ann. § 17–1–1(c) *et seq.* (1995 & Supp.1999) prescribe the method and procedure for the county to adopt a land-use restriction.

These laws require local governments to adopt a comprehensive plan, *id.* [at] § 17–1–9; to create land-use zones within the County, *id.* [at] § 17–1–7; to adopt and announce a procedure by which zoning ordinances are determined, established, enforced, amended, supplemented, or changed, *id.* [at] § 17–1–15; and to hold a public hearing, with at least 15 days published notice, before adoption of a zoning ordinance, *id.* [at] §§ 17–1–15 and 17–1–17.

*Board of Supervisors of Harrison County, Mississippi and Harrison County v. Waste Management of Mississippi, Inc.*, 759 S.2d 397, 400 (Miss.2000). "The County's failure to follow the statute, in and of itself, makes the ordinance invalid." *Id.* at 401. In *Harrison*, the County Board of Supervisors of Harrison County enacted an ordinance blocking the continued operation and expansion of the only landfill in Harrison County. Waste Management timely filed a bill of exceptions to the ordinance raising many issues including due process and statutory violation. The County conceded that (1) the ordinance restricted the use of the land; (2) divided the County into two districts: one in which the construction/expansion of the landfills is prohibited; the other in which these activities are allowed; (3) the ordinance

affected the only operating landfill in the County; and (4) the County did not comply with the state zoning laws in adopting the land use restriction. It further conceded that it failed to satisfy the statutory prerequisites, but it contended that the state zoning laws did not apply because (1) the ordinance was not an attempt to zone and (2) the County adopted the ordinance in the exercise of its police policies.

Miss.Code Ann. § 17–1–7 (Supp.1999) states that counties and municipalities have the authority to set up zones to "regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land." *Harrison* at 400. The Harrison County ordinance on its face restricted land-use and divided Harrison County into two districts.

The Harrison County Circuit Court found, *inter alia*, that the ordinance could not pass constitutional muster since the County conceded that it neither gave notice nor held a public hearing before enacting the ordinance. The Circuit Court held that the ordinance was void and of no effect because the County failed to comply with the state law governing the adoption of land-use restrictions. The Mississippi Supreme Court affirmed that ruling.

*Great South Fair* is consistent with *Harrison*. The City of Petal passed a zoning ordinance in an effort to limit the operation of fairs within the city to not more than one consecutive day of operation. The Supreme Court, applying Miss. Code Ann § 17–1–9, expressly stated that the "[t]he zoning statutes of this state contemplate the adoption by each municipality of a comprehensive zoning plan." *Great South Fair* at 1293. (Citation omitted). That Court further found that the ordinance adopted by the City of Petal bore no relation to a comprehensive plan. The Mississippi Supreme Court reversed

the lower court's ruling and found the ordinance invalid.

Additionally, according to the Office of the Attorney General of the State of Mississippi, a "comprehensive zoning ordinance is required in order for the County to enact an ordinance regulating sexually oriented businesses and nudity." August 16, 1996, Miss. A.G. Op. # 96–0530. Attorney General opinions are advisory only and are not binding on the court. However, when such opinions indicate sound reasoning, this court will give them great consideration.

In this case, Lowndes County's Ordinance not only includes a detailed description of what dancers and patrons can and cannot do within regulated establishments, but also dictates where such establishments may be located. Under the Ordinance, sexually oriented businesses may not be operated within 1,500 feet of:

- churches, synagogues, mosques, temples or buildings which are used primarily for religious worship and related religious activities;

- public or private educational facility such as child day cares, nursery schools, preschools, kindergartens, elementary schools, private schools, intermediate schools, junior high schools, middle schools, high schools, vocational schools, secondary schools, continuation schools, special education schools, junior colleges and universities;

- public parks or recreational areas including playgrounds, nature trails, swimming pools, reservoirs, athletic fields, basketball or tennis courts, skating rinks, pedestrian/bicycle paths, wilderness areas, or similar public land under the control, operation, or management of Lowndes County;

- another sexually oriented business or in the same building, structure or portion of another like business.

This element of the Ordinance brings it within the purview of a land-use restriction. Under Mississippi law, the local government is required to adopt such restrictions in accordance with a comprehensive zoning plan. To the extent that it must be adopted in accordance with a comprehensive zoning plan, certain requirements must be met. Miss.Code Ann. § 17–1–1(c) mandates that the plan must consist of the following elements at a minimum:

(i) Goals and objectives for the long-range (twenty (20) to twenty-five (25) years) development of the county or municipality. Required goals and objectives shall address, at a minimum, residential, commercial and industrial development; parks, open space and recreation; street or road improvements; public schools and community facilities.

(ii) A land use plan which designates in map or policy form the proposed general distribution and extent of the uses of land for residences, commerce, industry, recreation and open space, public/quasi-public facilities and lands.

(iii) A transportation plan depicting in map form the proposed functional classifications for all existing and proposed streets, roads and highways for the area encompassed by the land use plan and for the same time period as that covered by the land use plan.

(iv) A community facilities plan as a basis for a capital improvements program including, but not limited to, the following: housing; schools; parks and recreation; public buildings and facilities; and utilities and drainage.

Admittedly, it seems irrelevant in these proceedings whether the County should delineate roads, schools, etc. in order to satisfy its desire to regulate lap

dancing and other forms of artistic expression. Nevertheless, the letter of the law must be followed. The Ordinance enacted by Lowndes County, as it currently stands, bears no such relation to a comprehensive plan. It lacks the minimum elements required by § 17–1–1(c).

The court concludes that Lowndes County's Ordinance can be adopted only as part of a comprehensive scheme or plan of zoning affecting the entire County. Since the Ordinance fails to comply with this State's statutes, it is, therefore, invalid.

## CONCLUSION

■ For the court to grant a preliminary injunction, the plaintiff must carry the burden of all four of the *Canal* elements:

(1) a substantial likelihood that plaintiff will prevail on the merits,

(2) a substantial threat that irreparable injury will result if the injunction is not granted,

(3) that the threatened injury outweighs the threatened harm to defendant, and

(4) that granting the preliminary injunction will not disserve the public interest.

The court has determined that Section IX (B)(7) of the Lowndes County Ordinance of September 17, 2001, is unconstitutional and that Lowndes County failed to follow the prescribed method and procedure for enacting land-use ordinances imposed by state law. For these reasons the Ordinance appears to be invalid. Accordingly, the court finds that Freelance will likely succeed on the merits against Lowndes County.

■ There is a strong presumption of irreparable injury in cases involving infringement of First Amendment rights. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at 373, 96 S.Ct. 2673.

The threatened harm to Freelance outweighs the threatened harm to the County. Though Freelance has never applied for a license from the County to operate as an adult entertainment business and has never operated as such, allowing Freelance to operate temporarily would pose a minimal threat to the County. It is unlikely that the County's concerns over the secondary effects of allowing Freelance to offer adult entertainment will be significantly realized in the time it will take for the County to cure the defects in the Ordinance or for this case to proceed to trial. Furthermore, the County possesses constitutional police power sufficient to control these secondary effects should they occur.

A preliminary injunction in this case will not disserve the public interest. Instead, it is in the public's interest to protect rights guaranteed under the Constitution of the United States.

## *ORDER*

In accordance with the memorandum opinion issued this day, it is hereby **ORDERED:**

That the plaintiffs' motion for preliminary injunction pursuant to Fed.R.Civ.P. 65 is **GRANTED.**

The Lowndes County Board of Supervisors are temporarily **ENJOINED** from enforcing the Sexually Oriented Business Ordinance of September 17, 2001. The County is enjoined from enforcing said Ordinance until such time as Lowndes County revises this Ordinance to adequately protect First Amendment rights making it constitutionally valid. The County is further enjoined from enforcing the Ordinance until the Ordinance complies with State law requiring

land-use restrictions to be made in accordance with a comprehensive zoning plan.